**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVEN KELLY,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Case No. 1:24-cv-00209** |
| | **:** | |
| **v.** | **:** | **Judge Algenon L. Marbley** |
| | **:** | |
| | **:** | **Magistrate Judge Elizabeth Preston** |
| | **:** | **Deavers** |
| **POWER HOME SOLAR, LLC,** *et al.*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**OPINION & ORDER**

This matter comes before this Court on Plaintiff Steven Kelly's Motion to Remand (the "Motion") (ECF No. 13). For the reasons set forth below, Plaintiff's Motion to Remand (ECF No. 13) is **DENIED**.

**I.    BACKGROUND**

On March 7, 2024, Plaintiff Steven Kelly, an Ohio resident, filed a complaint against a solar power company, Power Home Solar, LLC, d/b/a, Pink Energy ("Pink Energy"); a not-for-profit financial cooperative, Digital Federal Credit Union ("DFCU"); a 25% owner in Pink Energy, Trivest Partners, L.P. ("Trivest"); founder and CEO of Pink Energy, Jayson Waller; and alleged "employee/supervisor" and "employee/manager" of Pink Energy Paul Grysiuk and Jake Hynes, respectively. (ECF No. 3). The only Ohio resident defendants are Grysiuk and Hynes. On April 17, 2024, Defendant Trivest removed the action to this Court for related bankruptcy jurisdiction.

(ECF No. 1). On May 15, 2024, Plaintiff filed an Amended Complaint before filing the Motion. (ECF No. 12).[1] Each party relies on the Amended Complaint in their briefing.

The Amended Complaint includes claims for contract breach, fraudulent misrepresentation, negligent misrepresentation, negligent hiring and training, violation of the Ohio Consumer Sales Practices Act, civil conspiracy, and alter ego. (*Id*.). The claims arise out of a sales agreement and associated loan agreement for the sale and installation of a solar energy system. Plaintiff alleges various wrongful actions in connection with the sale were committed by "Pink Energy Group" which Plaintiff defines as "Defendant Pink Energy and/or Defendant Trivest, and/or Defendant Waller, and/or Defendant Grysiuk, and/or Defendant Hynes." (*Id*. ¶ 10). The Amended Complaint alleges that the Pink Energy Group trained and encouraged employees to use "hard sell tactics" in an attempt to sell their solar panel systems and loan products. (*Id*. ¶¶ 49–63). Plaintiff alleges the tactics used were deceptive, the Pink Energy Group pushed misleading and false information, and the Pink Energy Group trained and directed sales agents to use the deceptive hard sell tactics. (*Id*. ¶¶ 52–53). These tactics included misrepresenting cash incentive and tax credit opportunities, providing false information about cost offsets, and hiding financing fees. (*Id*. ¶¶ 49–63).

On April 17, 2024, Defendant Trivest removed the case to this Court for related bankruptcy jurisdiction. (ECF No. 1). Trivest argues that this court has related bankruptcy jurisdiction because Pink Energy is a debtor in ongoing bankruptcy proceedings. (*Id*.). An order from the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") indicates that Defendant Pink Energy is the debtor in a bankruptcy proceeding and the Bankruptcy Court

---

[1] Plaintiff has since filed a Second Amended Complaint to correct the spelling of Jake Hyne's name (spelled Jake Hines in prior complaints). (ECF No. 35). For consistency purposes, this Court will reference the same complaint from parties' briefings on the Motion to Remand.

granted a motion to modify the automatic stay. (ECF No. 1-2). The stay was modified to allow cases against Pink Energy to proceed in United States District Court for the Southern District of Ohio. (*Id*.). The Bankruptcy Court noted "the entry of judgment against [Pink Energy] in the litigation in the United States District Court for the District of Ohio would not result in detriment to the estate of the Debtor, as any such judgment creditor would not be seeking to recover from assets in this bankruptcy estate, but instead would seek recovery from insurance coverage (to the extent available), and/or from other non-debtor defendants in the litigation." (*Id*.). Defendants Trivest and Pink Energy filed briefs in opposition to the Motion. (ECF Nos. 24, 25). Defendant DFCU filed a limited joinder in Pink Energy's opposition. (ECF No. 26).

## II.    STANDARD OF REVIEW

Trivest removed this case pursuant to 28 U.S.C. §§ 1452 and 1334 because this is a case "relating to" bankruptcy proceedings. (ECF No. 1). Generally, removal of "any claim or cause of action in a civil action" is authorized under 28 U.S.C. § 1452 when a court has jurisdiction under 28 U.S.C. § 1334. *In re HNRC Dissolution Co.*, 761 F. App'x 553, 559–60 (6th Cir. 2019). Pursuant to § 1334(b), district courts have jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). When determining jurisdiction "the court need only 'determine whether a matter is at least 'related to' the bankruptcy.'" *In re HNRC Dissolution Co.*, 761 F. App'x at 559–60 (quoting *Mich. Emp't. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991)).

The Sixth Circuit finds that "related to" jurisdiction is governed by an expansive definition and requires this court to ask, "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id*. (quoting *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. ( In re Dow Corning Corp.)*, 86 F.3d 482, 489

3

(6th Cir. 1996). "In other words, there is 'related to' jurisdiction if the *outcome* of the proceeding could *conceivably* 'alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)' or otherwise impact 'the handling and administration of the bankrupt estate.' *Id*. at 560 (quoting *In re Dow Corning Corp.*, 86 F.3d at 489).

### III.    LAW & ANALYSIS

Trivest removes this case and argues this Court has jurisdiction on one ground: because the case is "related to" bankruptcy proceedings pursuant to 28 U.S.C. §§ 1452 and 1334. (ECF No. 1). Plaintiff argues that this Court has no jurisdiction and, if it did, this Court should abstain. (ECF No. 1 at 2).

### A.  "Related to" Jurisdiction

First, as Defendants Trivest and Pink Energy have noted, Pink Energy is the debtor in the pending bankruptcy case and is a named defendant here. (ECF Nos. 24 at 9; 25 at 4). Indeed, a cause of action is "related to" a bankruptcy proceeding for purposes of jurisdiction if the cause of action's "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Dow Corning Corp.*, 86 F.3d at 489. Here, a debtor's rights and liabilities are directly impacted as the debtor is named and being directly sued. *See e.g.*, *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 CIV. 0277 (LAP), 1995 WL 489711, at *6 (S.D.N.Y. Aug. 15, 1995) (finding "there can be no dispute that there is jurisdiction over" the claims against only the debtor including specific performance and breach of contract claims); *In re Chateaugay Corp.*, 213 B.R. 633, 639 n.6 (S.D.N.Y. 1997) ("Clearly, the claims against the Debtors themselves . . . have a 'conceivable effect' on their estates. The issue is whether successor liability claims against non-debtor . . . have such a 'conceivable effect.'").

4

Plaintiff argues Defendant Trivest has failed to prove this case would impact the bankruptcy estate. When addressing the abstention argument (discussed further below), Plaintiff references the effect of the Bankruptcy Court's Order (the "Order") modifying automatic stay. (ECF No. 13 at 13). The Order allowed the debtor to be a named defendant "in the United States District Court for the District of Ohio, with the further limitation and restriction that any recovery on any judgment against the Debtor would be limited to available insurance coverage, or recovery from other non-debtor defendants." (ECF No. 1-2 at 3). Plaintiff relies on this language to argue that the Order means litigation would not impact the bankruptcy estate if Plaintiff only pursued Pink Energy's available insurance money. (ECF No. 13 at 13). Based on the Order, Plaintiff argues this matter is unrelated to a bankruptcy proceeding because Plaintiff is not seeking liability from Pink Energy other than to the extent of its insurance. (*Id*.).

While the Order limits the "recovery" on judgment against the debtor to available insurance coverage, this Court's judgment is not limited to available insurance coverage. (ECF No. 1-2 at 3). The bankruptcy court granted relief so Plaintiff could "pursue applicable insurance monies." (*Id*.). Nothing in the Complaint, however, limits Plaintiff's request for relief to available insurance.

Even if the judgment in this case would only impact Pink Energy's insurance, this Court notes that generally, a debtor's interest in insurance policies is property of the debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1). *In re Dow Corning Corp.*, 86 F.3d at 495. For example, the court in *In re Dow Corning Corp*. held that a finding of "related to" jurisdiction over claims against both the debtor and non-debtors was supported by the debtors and non-debtors sharing joint insurance. *Id.* The Sixth Circuit noted that the insurance policy at issue was covered under the expansive definition of property of an estate under 11 U.S.C. § 541(a)(1). *Id.* The debtors and non-debtors argued that "related to" jurisdiction existed as to the claims against the non-debtors

because there was joint insurance and permitting several trials against the non-debtors, without the debtor, may result in the non-debtors making claims for insurance before the debtor is able to make any claims of its own. *Id*. The district court found no basis for jurisdiction over the non-debtors' claims because no judgment had been entered against the non-debtors and the non-debtors did not have any claims pending against the joint insurance policies. The Sixth Circuit found the district court erred because an immediate impact of the estate is not a prerequisite to finding "related to" jurisdiction. *Id*. The court then held "related to" jurisdiction over the non-debtors was supported by the debtor's interest in their insurance policies threatened by causes of action against non-debtor defendants who were also co-insurers. *Id*.

The impact on a debtor's insurance is far less attenuated as the debtor is named in the civil proceeding. This Court need not look at whether the outcome of this case would result in other parties having claims against the debtor's insurance. Instead, this case involves a direct impact on the debtor's insurance. *See e.g.*, *Landry v. Exxon Pipeline Co*., 260 B.R. 769, 784 (Bankr. M.D. La. 2001) ("Most courts addressing whether "property of the estate" includes insurance policies have held that an insurance policy owned by the debtor is property of the estate under 11 U.S.C. § 541.53."). This Court thus finds that claims against the debtor, Pink Energy, are related to the bankruptcy proceeding.

The next inquiry is whether the claims against the non-debtors are similarly "related to" the bankruptcy proceeding. The cause of action "'need not necessarily be against the debtor or against the debtor's property' to satisfy the requirements for 'related to' jurisdiction. *In re Dow Corning Corp*., 86 F.3d at 489. For example, in *In re Dow Corning Corp*., the court found that the district court had subject matter jurisdiction over claims pending against not only the Chapter 11 debtor but also the non-debtors when there was a possibility of contribution or indemnification

liability. *In re Dow Corning Corp.*, 86 F.3d at 494. In that case, the non-debtors removed claims in which they were named defendants with the debtor. *Id*. at 486. When analyzing whether the district court had subject matter jurisdiction over the claims pending against the non-debtor defendants pursuant to 28 U.S.C. § 1334(b), the Sixth Circuit found that "[c]laims for indemnification and contribution, whether asserted against or by [the debtor], obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as [the debtor]'s ability to resolve its liabilities and proceed with reorganization." *In re Dow Corning Corp.*, 86 F.3d at 494. The possibility of the debtor to be held liable to non-debtors for contribution or indemnification claims "establish[ed] a conceivable impact on the estate in bankruptcy." *Id*. at 488, 486.

Plaintiff maintains that, in order to show how the case against non-debtors impact the debtor's bankruptcy proceedings, the non-debtor is required to show that the bankrupt company must indemnify or contribute to the defense of the moving party. (ECF No. 13 at 11). In the case *sub judice*, Defendants do not claim any indemnification or contribution obligations. (ECF Nos. 24 at 9–10; 25 at 4–5). But non-debtors need not make such a showing.

The decision in *In re Dow Corning Corp*, however, emphasizes that "when [a] plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." *In re Dow Corning Corp.*, 86 F.3d at 492 (citing *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986). The court noted the significance of the extent to which parties are "intertwined" and relies on a Fifth Circuit decision supporting this principle:

> The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if Dr. Wood and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If,

> on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing the complaint, the plaintiff challenged the combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham's involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.

*Id*. at 492 (quoting *In re Wood*, 825 F.2d 90, 93–94 (5th Cir.1987)). The Sixth Circuit explained the importance of "[t]he degree of identity between a debtor and non-debtor codefendants." *In re Dow Corning Corp*., 86 F.3d at 492 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir.1986)). The court referenced these principles when examining the contribution and indemnification liability and finding the district court had "related to" subject matter jurisdiction over claims against codefendant non-debtors because the nature of the claims against the debtor and non-debtor defendants were closely related. *Id*. at 493.

Both Plaintiff and Defendant discuss *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 870 (S.D. Ohio 2004), in which the court found the defendants' indemnification and contribution claims could conceivably alter the bankruptcy estate. (ECF Nos. 13 at 11; 24 at 9; 25 at 6). Plaintiff's argument relies on the indemnification and contribution argument made by the non-debtors in the case. (ECF No. 13 at 11-12). Although the indemnification and contribution arguments were a significant part of the court's decision, before reaching its finding, the court noted that jurisdiction exists when "the conduct of the non-debtor defendants and . . . the debtor, was 'indisputably intertwined' and the theories of liability asserted by the plaintiffs were "'necessarily interconnected with [the] Defendants' rights to contribution.'" *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 870 (quoting *In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 321 (S.D.N.Y.2003). The court held that a finding of "related to" jurisdiction was supported because the allegations against the non-debtor

defendants stemmed from the roles they played in the debtor's operations to the extent that if the debtor committed no wrong, the plaintiffs would need to prove their claims against the non-debtors. *Id*. at 871.

Similarly, in the case *sub judice*, the nature of the claims against the debtor defendant, Pink Energy, and the non-debtor defendants are closely related and "indisputably intertwined." Plaintiff's Amended Complaint names each defendant, but defines the non-debtor and debtor defendants (except DFCU) as "Pink Energy Group." (ECF No. 12 ¶ 10). Plaintiff alleges fourteen causes of action: ten are against the Pink Energy Group and DFCU; one is against only DFCU; one is a declaratory judgment involving Pink Energy and the Pink Energy Group; one is a declaratory judgment involving Pink Energy and DFCU; and one is a declaratory judgment involving Pink Energy and Defendant Waller. (*Id*. ¶¶ 91–231).

The first cause of action is against Pink Energy Group and DFCU for breach of contract. (*Id*. ¶¶ 91–98). Plaintiff alleges that "[t]he Pink Energy Group has breached the terms of the Sales Agreement by failing to deliver a solar system that meets industry standards; by failing to install the system in a workmanlike manner; by failing to competently install and connect the various components of the system, by failing to activate the system according to the Sales Agreement and failing to maintain and or repair flaws in the system which occurred and continue to occur to the present date." (*Id*. ¶ 94). Plaintiff also alleges that, pursuant to the "Holder Rule" Notice in the Loan Agreement, DCFU is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶ 98).

Similarly, the second cause of action is a fraudulent misrepresentation claim and alleges "[t]he Pink Energy Group made false representations regarding facts material to the purchase, installation, performance, and maintenance and repair of their solar system . . . ." (*Id*. ¶ 104).

Plaintiff also alleges that "The Pink Energy Group possessed actual and/or constructive knowledge of the falsity of their representations . . . . . [and] [t]he Pink Energy Group made the fraudulent and false misrepresentations to matters of material fact . . . with the intent to mislead Plaintiff into relying on such fraudulent and false misrepresentations." (*Id*. ¶ ¶ 104–05). Plaintiff also states that DFCU acted by and through Pink Energy and pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶¶ 106, 113).

The third and fourth causes of action are against Pink Energy Group and DFCU. While the claims focus on the actions of the Pink Energy Group, they allege that the Pink Energy Group acted in a dual agency relationship with DFCU and/or acted by and through their agent, Pink Energy, and further that, pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶¶ 117–118, 124, 127, 129, 135).

The seventh, eighth, ninth, and eleventh causes of actions are also against Pink Energy Group and DFCU and focus on the actions of the Pink Energy Group. (*Id.* ¶¶ 155 –80). These causes of action also allege DFCU, pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id.* ¶¶ 163, 169, 184).

The tenth cause of action is regarding civil conspiracy and alleges defendant DFCU acted in concert with the Pink Energy Group in facilitating fraudulent conduct. (*Id*. ¶ 190). The twelfth cause of action is only against DFCU, but still alleges its actions were "an integral part of the Pink Energy Group and [DFCU']s fraudulent scheme." (*Id*. ¶ 213). The thirteenth cause of action is to hold Defendant Waller personally liable, For the fourteenth cause of action, Plaintiff alleges specific actions of the Pink Energy Group and further alleges DFCU and Trivest acted in concert with the Pink Energy Group. It also alleges that pursuant to the "Holder Rule" Notice in the Loan

10

Agreement, DFCU is subject to the same claims asserted against Pink Energy Group. (*Id.* ¶¶ 227, 228, 231).

In each cause of action involving Pink Energy Group, Plaintiff's allegations mainly reference actions of *Pink Energy Group* which demonstrates the extent the debtors and non-debtors are indisputably intertwined. Although DFCU is not included in Pink Energy Group, as explained above, the allegations are all linked to the actions of Pink Energy Group. Therefore, this court finds that it has "related to" bankruptcy jurisdiction here.

### B.  Abstention

Plaintiff argues that if this Court finds it has jurisdiction because this is a case "relating to" bankruptcy proceedings, this Court should nonetheless abstain from hearing the matter or equitably remand this case to state court. (ECF No. 13 at 12–14).

### 1.  Discretionary Abstention

This Court has discretion to abstain under  28 U.S.C. § 1334(c)(1) or to equitably remand under 28 U.S.C. § 1452(b). Under Section 1334(c)(1), federal courts consider various factors including: "1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted 'core' proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves

forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of non-debtor parties; and 13) any unusual or other significant factors." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 885 (quoting *Mann v. Waste Mgmt. of Ohio, Inc.,* 253 B.R. 211, 214 (N.D.Ohio 2000)).

The analysis under § 1334(c)(1) is largely the same as under § 1452(b). Section 1452(b) provides, "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Courts consider: "1) duplicative and uneconomical use of judicial resources in two forums; 2) prejudice to the involuntarily removed parties; 3) forum non conveniens; 4) the state court's ability to handle a suit involving questions of state law; 5) comity considerations; 6) lessened possibility of an inconsistent result; and 7) the expertise of the court in which the matter was originally pending." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 885 (quoting *Mann,* 253 B.R. at 214–15).

Plaintiff argues this Court should abstain because Trivest have not asserted how this case impacts the Pink Energy Bankruptcy and that the Bankruptcy Court for the Western District of North Carolina decided this matter would not affect the bankruptcy estate so long as Plaintiff only pursued Pink Energy's insurance monies. (ECF No. 13 at 12–13). Plaintiff asserts he is not seeking liability from Pink Energy other than from its insurance monies. As this Court has decided, this case is related to the Pink Energy bankruptcy proceeding as insurance policies are part of the bankruptcy estate. Further, while the Bankruptcy Court may have modified the stay and stated that recovery of any judgment would be limited to insurance monies, this Court's final judgment does not have the same limitations based on Plaintiff's request for relief.

12

Plaintiff also argues that this case involves state law claims, and "comity counsels in favor of state-court resolution of state-law claims." (ECF No. 13 at 13). Nonetheless, as Trivest has argued, this Court is familiar "with the facts and legal issues in the near twenty Pink Energy/Waller lawsuits Plaintiff's counsel has brought in federal court, all being close to carbon copies." (ECF No. 25 at 6).

Based on Plaintiff's arguments and consideration of the factors used to determine abstention, this Court does not find discretionary abstention appropriate here.

### 2. *Mandatory Abstention*

Plaintiff argues generally for abstention under § 1334 but only provides support for discretionary abstention. (ECF No. 13 at 12–14). Under § 1334, however, there is a provision for mandatory abstention which applies when: (1) a timely motion is made; (2) the claim or cause of action is based on state law; (3) the claim or cause of action is "related to" a bankruptcy case, but did not "arise in" or "arise under" the bankruptcy case; (4) the action could not have been commenced in federal court absent § 1334 jurisdiction; (5) the action is commenced in state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in state court. 28 U.S.C. § 1334(c)(2); *see also In re Dow Corning Corp.,* 86 F.3d at 497.

The party seeking mandatory abstention bears the burden of demonstrating that each requirement is satisfied. *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 881. While Plaintiff references abstention under § 1334, neither party specifically addressed mandatory abstention under § 1334(c)(2). Faced with an inadequate argument, this Court feels constrained in applying the requirements under § 1334(c)(2). Out of an abundance of caution, this Court has nonetheless examined each requirement based on the information provided in the briefing and pleadings and has found that mandatory abstention would be improper.

### a. Timely Motion Requirement

As to the first requirement, this Court finds that a timely motion was not made for abstention under § 1334(c)(2), as Plaintiff did not argue for mandatory abstention in the Motion. *See MA Equip. Leasing I LLC v. Tilton*, No. 2:09-CV-880, 2010 WL 11538520, at *10 (S.D. Ohio Aug. 19, 2010) (finding no timely motion was made thus argument of mandatory abstention was waived when plaintiffs failed to properly raise their argument in their motion to remand and make no reference to mandatory abstention).

### b. State Law and "Related To" Bankruptcy Requirements

Turning to the second requirement, Plaintiff has not asserted any federal claims. With respect to the third requirement, mandatory abstention does not apply to cases that "arise in" or "arise under" a title 11 bankruptcy case. It applies if the cause of action is "related to" a bankruptcy but could "exist outside of bankruptcy." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 874 (quoting *In re Webb*, 227 B.R. 494, 497 (Bankr.S.D.Ohio 1998). A cause of action is "arising under title 11" when it is "created by or determined by a statutory provision of title 11." *Id*. (quoting *Webb,* 227 B.R. at 497). Causes of action are "arising in" title 11 when those proceedings "by their very nature, could only arise in bankruptcy cases." *In re Wolverine Radio Co.,* 930 F.2d at 1144. The claims here are for fraud, contract breach, negligence, violation of the Ohio Consumer Sales Practices Act, civil conspiracy, and alter ego. (ECF No. 12). The causes of action could exist outside of the bankruptcy. It was not "created by or determined by a statutory provision of title 11" and "by [its] very nature" this case could arise outside of bankruptcy cases.

14

### c. Absence of Other Jurisdiction Requirement

The fourth requirement is satisfied as this Court finds it does not have diversity jurisdiction under 28 U.S.C. § 1332(a)(1) or federal question jurisdiction under 28 U.S.C. § 1331. *CPC Livestock, LLC v. Fifth Third Bank, Inc.*, 495 B.R. 332, 351 (W.D. Ky. 2013) (finding same after examining whether parties were fraudulently joined).

While not addressed in the context of abstention, diversity jurisdiction was briefed by Plaintiff and Defendant Pink Energy. (ECF Nos. 13 at 6–10; 24 at 4 –6). This case was removed by Trivest on one ground, "related to" bankruptcy jurisdiction, but Plaintiff also maintained that Trivest failed to argue sufficiently diversity jurisdiction in its removal. (ECF No. 13 at 6). Defendant Trivest did not respond because diversity jurisdiction was not the ground for removal. (ECF No. 25 at 2). Defendant Pink Energy responded that Defendants Grysiuk and Hynes were fraudulently joined; thus, this Court has diversity jurisdiction. (ECF No 24 at 4 –6).

Diversity jurisdiction requires that each defendant be a citizen of a state different from that of each plaintiff and requires and a claim for over $75,000. 28 U.S.C. § 1332(a)(1); s*ee also Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017). "A fraudulently joined party cannot defeat a court's subject matter jurisdiction." *Johnson v. DePuy Orthopaedics, Inc.*, No. 1:11 DP 21813, 2012 WL 13054734, at *2 (N.D. Ohio May 30, 2012). Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.,* 576 F.3d 620, 624 (6th Cir. 2009) (quoting *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir.1999)). To prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d

488, 493 (6th Cir.1999). "However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court." *Id*.

Pink Energy argues Plaintiff fails to plead a colorable claim against Grysiuk and Hynes.. (ECF No. 24 at 4 –6). Pink Energy maintains that this is demonstrated by Plaintiff's failure to allege wrongful acts by Grysiuk or Hynes separate and distinct from the Pink Energy Group's acts and fails to seek relief directly from them. (ECF No. 24 at 6). Various of these wrongdoings were allegedly committed by the Pink Energy Group, which is defined as "Defendant Pink Energy and/or Defendant Trivest, and/or Defendant Waller, and/or Defendant Grysiuk, and/or Defendant [Hynes]." (ECF No. 12 ¶ 10). Indeed, Plaintiff groups the non-diverse defendants with other defendants, as the Pink Energy Group and the added "and/or" nature of the definition of Pink Energy Group dilutes the relevance of those claims. As Pink Energy explained in their opposition, "[w]here identical wrongful acts were collectively alleged against individual and corporate defendants, they were deemed inadequate to state a claim against the individual [] leading to a denial of a request for remand." *Johnson*, 2012 WL 13054734, at *4 (citing *Novelli*, 2012 WL 949675 *4 -*5 (S.D. Tex. March 19, 2012)).

In *Johnson*, the plaintiffs characterized the non-diverse defendant as engaged in commerce for a product at issue that was implanted into plaintiff by a physician. 2012 WL 13054734, at *3. The non-diverse defendant was described as being involved with advertising, promoting, labeling, selling, distributing, marketing "and/or" supplying the product to the plaintiff's treating physician. *Id*. The plaintiff then alleged actions of the non-diverse defendants in conjunction with the diverse defendants, including selling the defective product, failing to warn of the product, and warranting that the product was safe. *Id*. at *4. The court noted that the complaint was twenty-one pages with ninety-one numbered paragraphs but the non-diverse defendant was only mentioned four times.

16

*Id*. at *4. The court found the allegations against the non-diverse defendant failed to distinguish between the diverse and non-diverse defendants' conduct and the plaintiff, thus, failed to establish a colorable basis for liability. *Id.* at *5.

While generic references are insufficient, this Court finds Plaintiff has used more than generic references to and offered more than labels and conclusions. *See Johnson*, 2012 WL 13054734. (finding "[p]laintiffs have failed to establish a colorable basis for liability" when "no more than labels and conclusions" were provided in the complaint). Unlike in *Johnson*, the non-diverse defendants here are mentioned several times that suggests more than labels and conclusions. Their acts are mentioned alongside the acts of Pink Energy Group, but the non-diverse defendants are specifically referenced within some of those allegations and offered more than mere conclusions. For example, some paragraphs only reference conduct of the Pink Energy Group. Other paragraphs reference "the Pink Energy Group, including specifically," Grysiuk and Hynes. (ECF No. 12 ¶¶ 25, 41, 49, 50, 51, 52, 53, 56, 161, 203). Other paragraphs mention conduct of Grysiuk and Hynes without mention to the Pink Energy Group's conduct. (ECF No 12 ¶¶ 29, 30, 57, 107, 119).

Plaintiff has established the basis for a colorable cause of action with respect to the non-diverse defendants. (ECF No. 13 at 8–9). When arguing this, Plaintiff relies on *McKinney v. CVS CaremarkCorp.*, S.D.Ohio No. 2:13-cv-00863, *McKinney v. CVS Caremark Corp.*, No. 2:13-CV-00863, 2014 WL 171838 (S.D. Ohio Jan. 13, 2014), *report and recommendation adopted*, No. 2:13-CV-863, 2014 WL 1608489 (S.D. Ohio Apr. 22, 2014). In *McKinney*, the plaintiff sought accommodation for her disability from her employer. *Id*. at *4. The non-diverse defendant was a human resources officer who held a telephone conference with the plaintiff and suggested the plaintiff go on leave in response to the accommodation request. *Id*. The non-diverse defendant then

asked the plaintiff whether she could meet the requirements of her job and stated that plaintiff would have to step down if she could not meet the requirements. The court found that it could not say with certainty that the plaintiff failed to state a colorable claim against the non-diverse defendant. The court noted that "a supervisor or manager may be held jointly and/or severally liable with her employer for her own discriminatory conduct" and that the non-diverse defendant "participated in the decision-making process with respect to plaintiff's request for an accommodation." *Id.*

As in *McKinney*, this Court cannot say with certainty that Plaintiff failed to state a colorable claim. The Amended Complaint essentially alleges that Grysiuk and Hynes learned (ECF No. 12 ¶ 29), used (*Id.* ¶¶ 30, 50, 52), taught/trained (*Id.* ¶¶ 41, 49, 53 107, 119, 161), and directed use of (*Id.* ¶¶ 25, 53, 56, 57) the alleged hard-sell tactics that give rise to Plaintiff's complaint. Plaintiff also alleges that Grysiuk and Hynes were "intimately involved in facilitating and directing sales agents, including the sales agent that had contact with Plaintiff, to push and use the misleading, fraudulent, and deceptive sales tactics." (*Id.* ¶ 57). Also, the sales person's contact with Plaintiff was allegedly at the directive of Grysiuk and Hynes. (*Id.*). As Pink Energy argued in its opposition, this is a mere conclusion. Even so, Plaintiff leads to the conclusion by alleging how Grysiuk and Hynes learned of the hard-sell tactics (*Id.* ¶ 29), and the techniques used "such as providing cash incentives and erroneous promises and threats regarding the Federal Tax Credit in an attempt to create an urgency to purchase in Plaintiff, stating that such incentives may not be available if Plaintiff did not sign that day." (*Id.* ¶ 50).

The colorable basis for a claim is further demonstrated as Plaintiff alleges Grysiuk and Hynes "pushed misleading and false information that their solar panel systems would completely or largely offset as customers energy usage need and completely or largely eliminate a customer's

monthly electric bill." (*Id*. ¶ 52).   The Amended Complaint also details that Grysiuk and Hynes "trained and directed their sales agents to use deceptive sales tactics to sell loan products." Plaintiff then details the sales tactics as not disclosing large financing fee and hiding the fees in total costs. (*Id*. ¶ 53).   Grysiuk and Hynes also allegedly directed agents to mislead customers about total costs by speaking about low monthly payments but failing to disclose the requirement of making a large cash payment about a year from the sale of the solar panel system. (*Id*. ¶ 56).   Only after alleging these activities does Plaintiff conclude that Grysiuk and Hynes were "intimately involved" in directing using the hard-sell tactics and it was at their directive that the sales person used these tactics when contacting Plaintiff. (*Id*. ¶ 57).

The ultimate question in deciding whether a party is fraudulently joined is "whether there exists a 'colorable basis for predicting that plaintiff may recover against non-diverse defendants.'" *Johnson v. DePuy Orthopaedics, Inc.*, No. 1:11 DP 21813, 2012 WL 13054734, at *2 (N.D. Ohio May 30, 2012) (quoting *Coyne*, 183 F.3d at 493). This Court finds Plaintiff has met this standard through each of the specific references to Grysiuk and Hynes's conduct. The non-diverse defendants have not been fraudulently joined. This Court therefore does not have diversity jurisdiction.

### d.  State Forum of Appropriate Jurisdiction Requirement

As to the fifth requirement, this Court can deduce that it is met. The action be commenced in state forum of appropriate jurisdiction and a state court is one of "appropriate jurisdiction," if it has subject-matter jurisdiction. *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 880. The complaint was originally filed is the Hamilton County Court of Common Pleas. (ECF No. 12 ¶ 1). In the Amended Complaint, plaintiff asserts that jurisdiction and venue is proper in that court. (*Id*. ¶ 12). The Hamilton County Court of Common Pleas indisputably has subject

matter jurisdiction over these state law claims. *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 880 (S.D. Ohio 2004)

### e. *Timely Adjudication Requirement*

The sixth requirement, however, remains at issue. No evidence on whether this case can be timely adjudicated in state court was provided. This is especially detrimental to any request for mandatory abstention because the party seeking mandatory abstention bears the burden of demonstrating that each requirement is satisfied. *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 881. The only argument Plaintiff provided to address any impact on adjudication is that "Trivest has failed to raise any reason in the case pending in Ohio state court that its interest would be affected by not litigating in Federal Court." Plaintiff also argue that it has "a right to a trial by jury" and assert that if this case is removed to the North Carolina Bankruptcy Court, Plaintiff would lose its jury trial rights and incur travel and counsel expenses. (ECF No. 13 at 13). This is irrelevant as this case would not be before the North Carolina Bankruptcy Court. The evidence on the record provides no indication that this case can be timely adjudicated in state court.

Based on the information presented to this Court, there is insufficient evidence on whether this case can be timely adjudicated in state court. It is also unlikely that a timely motion for mandatory abstention has even been made for this Court to consider. As a result, the requirements for mandatory abstention are not met. Mandatory abstention is improper here.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 13) is **DENIED**. The Defendants' motions to dismiss the First Amended Complaint  (ECF Nos. 17, 18, 19) are **DENIED as moot**. This Court granted a motion to stay briefing on motions to dismiss Plaintiff's

complaint pending the resolution for the Motion to Remand. (ECF No. 31). Thus, the stay is **LIFTED**. To allow Defendants a chance to make any desired updates, the current motions to dismiss are **DENIED as moot** (ECF Nos. 36, 37). Defendants may refile or file a new/updated motion by no later than **March 14, 2025.** Plaintiff's response brief to any Motion to Dismiss is due by **March 24, 2025**, and Defendants' reply is due by **March 31, 2025**.

      **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE:  March 5, 2025**